UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSHUA R. THORNE,

                    Plaintiff,

                                        **Hon. Hugh B. Scott**

                v.                                      10CV592A

                                        **Report
                                        and
MICHAEL J. ASTRUE Commissioner of     Recommendation**
Social Security,

                    Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 11 (defendant Commissioner), 13 (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits (Docket No. 1).

## PROCEDURAL BACKGROUND

The plaintiff, Joshua R. Thorne ("Thorne" or "plaintiff"), filed an application for disability insurance benefits on May 23, 2006. That application was denied initially and on reconsideration. The plaintiff appeared before Administrative Law Judge Timothy McGuan ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated December 15, 2008, that the plaintiff was not disabled within the meaning of the Social Security

Act. The ALJ's decision became the final decision of the Commissioner on June 3, 2010, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on July 21, 2010 (Docket No. 1). The parties moved for judgment on the pleadings (Docket No. 13 (plaintiff); Docket No. 11 (defendant)). The motions were argued and submitted on April 20, 2011.

## FACTUAL BACKGROUND[1]

Plaintiff was born on January 21, 1975, and was thirty-three years old when the ALJ's decision became final in 2008. He was a high school graduate and completed two years of college and is a Marine Corps veteran who worked in fifteen to twenty jobs (retail sales clerk, shelf stocker, landscape laborer) following his discharge, being terminated in approximately five of those positions, and quitting the remainder due to his inability to cope with his coworkers (Docket No. 1, Compl. ¶ 7; Docket No. 13, Pl. Memo. at 2; R. 452, 454-55). Plaintiff's earnings record showed that he had acquired sufficient quarters of coverage to remain insured through March 31, 2007; thus, he had to establish his disability on or before March 31, 2007, to be entitled to benefits (R. 16).

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claims impairment due to depression and personality disorder, as well arthritis in the right hand and from injury to his right eye (Docket No. 1, Compl. ¶ 8). Thorne alleges that he suffers from major depression and that he could not handle the pressure of working with others

---

[1] References noted as "(R.__)" are to the certified record of the administrative proceedings.

(R. 84-85; Docket No. 13, Pl. Memo. at 2-3). He stated that he avoided people at all costs and quit jobs when he "could no longer avoid people there" (R. 85).

Plaintiff was discharged from the Marine Corps and received a 50% disability pension from the Department of Veterans Affairs based on his depression (Docket No. 13, Pl. Memo. at 7; R. 19, 458).

Plaintiff was evaluated by Thomas Ryan, Ph.D., on July 5, 2005, at the request of the Social Security Administration (R. 21). Dr. Ryan opined that plaintiff could follow simple directions, perform simple tasks, generally maintain attention and concentration, maintain a regular schedule, learn new tasks, make decisions, and perform some complex tasks, while noting that plaintiff would have some difficulty related with others and dealing with stress (id.).

Plaintiff received most of his treatment at the Veterans Administration Medical Center ("VAMC") in Buffalo (Docket No. 13, Pl. Memo. at 3). On April 5, 2006, plaintiff underwent a vocational/psychological evaluation with VAMC staff psychologist Gary Warner (id.; R. 375-80). The evaluation found that plaintiff had a profile "consistent with significant tension, unhappiness and pessimism [R. 377]. Persons with this profile also suffer from eroded self-esteem, pervasive view of helplessness, resentment and mistrust, and modulation of anger is a significant problem" (Docket No. 13, Pl. Memo. at 3; R. 378). Dr. Warner found "that Mr. Thorne was poorly motivated for active vocational rehabilitation due to the severity of his mood and personality disorder" (Docket No. 13, Pl. Memo. at 3; R. 378). Dr. Warner stated that plaintiff would require "a long course of psychotherapy and that it would be a significant challenge for him to effectively engage in a therapeutic working relationship with a counselor" (Docket No. 13, Pl. Memo. at 3-4; R. 379). Another therapist, George McNally, noted that

plaintiff had been treated by many mental health providers but had limited progress at best (Docket No. 13, Pl. Memo. at 4; R. 424).  McNally, and later nurse practitioner Kathleen Vertino, diagnosed plaintiff with post-traumatic stress disorder, general anxiety disorder, and dispressive disorder (Docket No. 13, Pl. Memo. at 4; R. 424, 403).  The ALJ gave little weight to these opinions as not being supported by the record (R. 23, 24).

In 2009, plaintiff saw Dr. Syed Ahmed, who noted that plaintiff had moderate restrictions in his activities of daily living, maintaining social functioning, and deficiencies of concentration, persistence or pace (Docket No. 13, Pl. Memo. at 4-5; R. 431).

Jay Steinbrenner, vocational expert, concluded that plaintiff could perform past relevant work (file clerk, landscape laborer, or retail store clerk), where there was occasional interaction with coworkers (R. 26, 467-72).  The ALJ first posed to Steinbrenner a hypothetical based upon the findings of the non-treating psychologist (that of a younger person who could understand, remember, and carry out complex tasks, with occasional interaction with the public, and then adding that the hypothetical person having limited interaction with co-workers), and Steinbrenner concluded that plaintiff could perform most of his past relevant work save retail sales clerk and infantryman (R. 468, 469).  As noted by plaintiff during oral argument, the ALJ did not consider a major restriction plaintiff claims to have in posing this hypothetical to the vocational expert.

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to his previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

      (1) whether the plaintiff is currently working;

>   (2) whether the plaintiff suffers from a severe impairment;
>
>   (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>   (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
>   (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the focus is on plaintiff's depression and claimed mental impairments. Plaintiff claims that the ALJ's decision and particular findings were not supported by substantial evidence. Plaintiff faults the ALJ in finding that Thorne was employable, relying upon only one psychologist's report that he was employable but malingering (R. 245, 362) while discounting his treating professionals' consistent findings to the contrary (Docket No. 13, Pl. Memo. at 6-8). He argues that the ALJ erred in noting that Thorne's global assessment of functioning ("GAF") score was only between 58-60, when he had scores between 50-60 from 2003 to 2009, with a GAF score range of 41 to 50 indicating serious symptoms or any serious impairment in social, occupational, or school functioning (Docket No. 13, Pl. Memo. at 8; R. 182, 185, 186, 331, 350, 364, 368, 388, 403, 429), while GAF score range between 51 and 62 indicates moderate symptoms (see R. 25). The ALJ's finding here, however, is supported by substantial evidence since plaintiff's GAF score is in the moderate symptom range rather than the lower serious impairment range. At worst, plaintiff was at the high end of the serious symptoms or serious impairment range in 2004 and had higher scores approaching 60 in 2007-09.

I.   Plaintiff's RFC and His Past Relevant Work

At oral argument, plaintiff raised an additional objection that the ALJ's hypothetical to the vocational expert (R. 468-71) contained factual error, missing a major restriction. He argues that the ALJ erred in failing to provide specific findings regarding his past relevant work, as required by Social Security Ruling 82-62 (Docket No. 13, Pl. Memo. at 11-12). Also, during argument plaintiff noted that the ALJ did not consider a major restriction that plaintiff had in posing the hypothetical to the vocational expert (see R. 468-69, 26). The ALJ posed the

hypothetical that the person had no exertional limitations, that non-exertionally the individual could occasionally understand, remember and carry out complex and detailed tasks and occasionally interact with the public, that this person is younger with a high school education (R. 468). As posed, the vocational expert found that the hypothetical person could do plaintiff's past relevant work, except as a retail sales clerk (id.). The ALJ then added to this hypothetical that the person had occasional interaction with co-workers (R. 469), the vocational expert reaffirmed his finding, but then added that infantryman would be eliminated as an occupation (id.).

Plaintiff argues that the ALJ omitted moderate limitations on plaintiff's ability to complete an ordinary work day and perform at a consistent pace. The ALJ earlier in his opinion discounted the assessment of plaintiff's counsel, George McNally (R. 424-38), that noted those moderate limitations and restrictions on plaintiff's concentration, persistence, and pace and the number of absences plaintiff had a work (R. 427, 428), as well as plaintiff's marked limitations in social functioning, giving these findings little weight because they were not supported by the record and were not consistent with his global assessment of functioning (R. 23-24).

Defendant merely argues that the ALJ properly applied Social Security Ruling 82-62 and "posed a complete hypothetical question to the vocational expert regarding whether an individual with plaintiff's limitations, as found by the ALJ, could perform plaintiff's past work" (Docket No. 17, Def. Reply Memo. at 15-16). Defendant also contends that the ALJ properly gave little weight to McNally's findings since he was not a medical professional whose opinions are recognized as "acceptable medical source" in Social Security regulations (Docket No. 12, Def. Memo. at 27, 25-26).

The ALJ may properly rely upon a hypothetical question to a vocational expert that was based on substantial evidence in the record, Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (id. at 16). But where a key fact is omitted from the question, the hypothetical does not reflect the claimant's circumstances and cannot be relied upon, Dioguardi v. Commissioner of Soc. Sec., 445 F. Supp. 2d 288, 298-99 (W.D.N.Y. 2006) (Larimer, J.); Horbock v. Barnhart, 210 F. Supp. 2d 125, 134 (D. Conn. 2002) (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)).

Here, plaintiff had a spotty work record of over fifteen jobs of short duration, with plaintiff either quitting or being fired because of his inability to cope with coworkers and others (Docket No. 18, Pl. Reply Memo. at 6). While plaintiff's treatment records showed that he was able to interact with others (R. 24), the vocational expert opined that he could not return to a retail clerk position due to the condition that the hypothetical claimant could only occasionally interact with the public or coworkers. Had this hypothetical included the attendance issue raised by plaintiff and the pace of his performance when he is at work, the expert may have rendered a different opinion regarding plaintiff's other former relevant positions (file clerk, landscape laborer); further, the ALJ may have probed into why the retail clerk position was not appropriate but the other jobs were (cf. Docket No. 18, Pl. Reply at 6).

On this basis, this matter should be **remanded** for further proceedings.

II.     Other Grounds

Plaintiff argues that the ALJ failed to find that his post-traumatic stress disorder and anxiety disorder to be severe impairments (id. at 13-15). By failing to consider these disorders, plaintiff faults the ALJ in not following the requirements of Social Security Ruling 96-8p (id. at 15-16). Plaintiff contends that the ALJ also did not consider other relevant conditions in finding

9

his residual functional capacity (id. at 16) or factor in the type, dosage, effectiveness, and side effects of medication Thorne was taking, as required by Social Security Ruling 96-7p (id. at 16-17). Plaintiff further faults the ALJ for failing to develop the record (id. at 18-20) and not evaluating plaintiff's mental impairment as required by 20 C.F.R. § 404.1520a (id. at 20-22). At oral argument, plaintiff later conceded that the ALJ did not commit error in evaluating his mental impairment. He next contends the ALJ committed reversible error in not properly evaluating the opinion of his treating nurse practitioner Vertino and social worker McNally (as discussed above), as required by 20 C.F.R. §§ 404.1513(d) and 416.913(d) (id. at 22-24).

As plaintiff notes (Docket No. 13, Pl. Memo. at 6-7), the ALJ had no substantial evidence for finding that plaintiff was employable (but cf. R. 245). He disagrees with the ALJ's finding that plaintiff is focused on compensation (Docket No. 13, Pl. Memo. at 9-10; cf. R. 245). While plaintiff's VAMC providers consistently diagnosed his depression, Dr. Jerrold Ferraro (the medical provider relied upon by the ALJ) failed to diagnose his depression. Other providers (e.g., R. 357-58 (Dr. George Anslem)) noted that plaintiff had difficulty with therapy due to his illness, as Dr. Ferraro noted (R. 364) after asking plaintiff to leave his August 24, 2006, session (R. 362). Dr. Ferraro also notes that plaintiff was interested in seeking compensation while being employable, stating at one point that he was malingering (R. 245, 369, 381, 389; cf. R. 428 (McNally finding that plaintiff was a malingerer)). But the notation Dr. Ferraro made for August 24, 2006, stated that his diagnosis was "passive-aggressive personality disorder. R/O malingering" meaning that he had ruled out malingering (R. 362). Dr. Anslem noted that plaintiff had difficulties with other psychologists because of his personality disorder and that he demanded that the world conform to plaintiff's standards (R. 358-59). Plaintiff's personality

10


disorder may have affected his interaction with Dr. Ferraro, leading to Dr. Ferraro's statement regarding malingering and plaintiff's ability to resume work.  From this record, it is apparent that plaintiff was not a model patient, having been moved from treating personnel while at the Veterans Affairs Medical Center after his doctor and counselor left the medical center (see R. 198).  This may be a manifestation of plaintiff's condition, that his poor interaction with others may include interactions with medical staffs (see R. 378; Docket No. 18, Pl. Reply Memo. at 4).

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 11) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 13) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within fourteen (14) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective Dec. 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the</u>**

**recommendations contained herein.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 23, 2011